Randy J. Harvey CBN 255808
Bassinger & Harvey
5 Centerpointe Drive, Suite 400
Lake Oswego, Oregon 97035
Telephone: 503-822-5340
Facsimile: 916-307-5163
randy@bassingerharveylaw.com

Attorney for Kevin Franken

UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kevin Franken<br><br>        Plaintiff,<br><br>   vs.<br><br>Sally Jewell, Secretary<br>U.S. Department of the Interior;<br>Yellowstone National Park; David<br>Hallac, individually, and DOES 1-8<br>         Defendants. | Case No.: 1:15-CV-01368-EPG<br><br>**FIRST AMENDED COMPLAINT COMPENSATORY DAMAGES, EMOTIONAL DISTRESS DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF AND PUNITIVE DAMAGES, AND DEMAND FOR BENCH TRIAL** |

I.   JURISDICTION

1. Jurisdiction in this Court is founded on the existence of a federal question pursuant to 28 U.S.C. § 1331 and the deprivation of civil rights pursuant to 28 U.S.C. §1343(a)(3), as this is an action for relief under 42 U.S.C. § 1983, 28 U.S.C. §2201, and pursuant to the decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), and the Federal Tort Claims Act.

2. Plaintiff also invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367, as to claims based upon the laws of the State of Wyoming, as such claims form part of the same case or

controversy that is the basis for the claims within this Court's original jurisdiction.

3. Plaintiff also invokes the jurisdiction of this Court over the subject matter of this action as predicated on 28 U.S.C. §§ 1332, 1391(e) (1). The amount in controversy exceeds $75,000, exclusive of interest and costs.

## II.  VENUE

4. Venue in the Eastern District of California is proper pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident and citizen of the State of California.

## III. PARTIES

5. Plaintiff Kevin Franken is a resident and citizen of the State of California, and Defendant Sally Jewell, who is sued in her official capacity, as Secretary of the U.S. Department of the Interior, of which Yellowstone National Park ("Yellowstone") is a division and/or sub-department. Defendant Sally Jewell has authority over Yellowstone's programs, policies, practices, procedures, customs and protocols, and the promulgation thereof, including, without limitation, programs, policies, practices, procedures, customs and protocols of Yellowstone in conducting its operations, and is responsible for ensuring compliance by Yellowstone with applicable law.

6. Defendant David Hallac, ("Hallac") who is sued individually, was Chief of the Yellowstone Center for Resources and was Plaintiff's supervisor. David Hallac was directly responsible for overseeing his department's programs, policies, practices, procedures, customs and protocols, and the promulgation thereof, including, without limitation, programs, policies, practices, procedures, customs and protocols of the Yellowstone Center for Resources in conducting the supervision of its employees and is responsible for ensuring compliance by the Yellowstone Center for Resources with applicable law. David Hallac is a citizen of North Carolina, working at Cape Hatteras National Seashore, 1401 National Park Drive, Manteo, North Carolina 27954. David Hallac resides at 1301 W First Street, Kill Devil Hills, NC 27948.

7. DOES 1-8 are individuals whose true identities are presently unknown, at all relevant times herein were acting individually and/or were employed by Yellowstone or were agents, officers, directors, or affiliates working in concert with Yellowstone and acting under the authority or color of authority of Yellowstone in the State of Wyoming, Idaho and Montana. Defendant Does 1-8 are sued herein in their official and individual capacities. Names and identities of Doe Defendants 1-8 are unknown to Plaintiff at this time, because they are not specifically named in correspondence but are mentioned. When the identities of the Doe Defendants are known, Plaintiff will seek leave of Court to amend the pleadings to clearly identify Doe Defendants once discovery reveals their identity.

## IV. FACTUAL ALLEGATIONS

8. Plaintiff was an employee of Yellowstone, but is now a permanent resident of the State of California, residing at 3984 Dunn Road, Valley Springs, California 95252, and was residing at this address at relevant times related to this cause of action.

9. Plaintiff maintained private and personal electronic - files and emails on his work computer as permitted by Park policy and practice. Plaintiff's last day of employment with Park was February 9, 2013.

10. Plaintiff, while employed by Yellowstone, filed two Equal Employment Opportunity Commission (EEOC) complaints against then Secretary of the U.S. Department of Interior, Ken Salazar, for discrimination and retaliation (EEOC No. 541-2012-00141X), which were settled by agreement on January 11, 2013.

11. Defendants Yellowstone, Hallac, and Does 1-8 were involved with and participated in Defendant's investigation and response to Plaintiff's EEOC complaints.

12. January 11, 2013 the EEOC complaints were settled and contained a provision requiring Yellowstone to return electronic emails to Plaintiff (¶21 January 11, 2013 Settlement Agreement).

13. According to the settlement agreement, February 9, 2013, was Plaintiff's last day of work at Yellowstone; however, on February 9, 2013, when Plaintiff attempted to access his work computer in order to remove his personal electronic files and emails, Plaintiff was electronically locked out of his computer and unable to remove his personal property from the computer.

14. Defendants' affirmative and intentional act to lock Plaintiff out of his work computer while he was still a Yellowstone employee and before his final day of work was not a common Yellowstone practice.  Defendants denied Plaintiff appropriate, reasonable, and valid access to his personal property electronic files both while Plaintiff was an employee and after Plaintiff requested access after being denied access. Defendants continued to deny Plaintiff his property after he left Park's employ.  Plaintiff requested access multiple times, including twice informally via email, once formally via the FOIA and Privacy Act requests, and once via notice pursuant to the Federal Tort Claims Act, and now via this suit.

15. Yellowstone did not inform or give notice to Plaintiff in advance that Yellowstone would lock him out of his computer and retain his personal files, nor did the Yellowstone give Plaintiff the opportunity to recover his electronic personal property.

16. Yellowstone has a practice of awarding a wooden arrowhead to departing employees who have worked at Yellowstone for five or more years. Yellowstone denied awarding the wooden arrowhead to the Plaintiff upon his departure from Yellowstone.

17. February 11, 2013, while en route to California, Plaintiff sent an email to Andy Bilton, Information Technology Specialist at Yellowstone, requesting the return of his electronic files.

18.  February 14, 2013, Plaintiff again sent another  email to Andy Bilton requesting the return of Plaintiff's personal files off his work computer, because, in part, he needed to send some of the files to human resources at his new job

19. Andy Bilton did not respond to either the February 11, or 14, 2013 emails from Plaintiff.

20. March 12, 2013, Hallac agreed via a telephone conversation to provide Plaintiff all of his personal electronic files on his computer (Telephone conference March 12, 2013) after he got his supervisor's approval.

21. On March 12, 2013, Hallac mailed to Plaintiff an envelope allegedly containing a thumb drive with Plaintiff's electronic files on it; however, the standard letter envelope that arrived contained no thumb drive.

22. Thereafter, Hallac created an electronic File Transfer Protocol (FTP) site and loaded a portion of Plaintiff's files to that site for Plaintiff to access. Plaintiff downloaded all the files provided by Hallac on the FTP site, but Plaintiff discovered that many files were missing.

23. Sometime after the March 12, 2013 telephonic agreement by Hallac, Hallac changed his mind and decided not to provide all of Plaintiff's electronic files to him.

24. March 29, 2013, Hallac, sent an email to Plaintiff's attorney wherein he stated, "I provided all of the files that I was authorized to make available to Mr. Kevin Franken on the FTP site." Unknown Doe Defendants and Hallac decided not to send all of Plaintiff's personal property electronic files to him. Hallac never explained why some of Plaintiff's own personal property electronic files were "authorized" and why some files were not "authorized" to be provided to Plaintiff.

25. Hallac and unknown Doe Defendants had no authority to retain Plaintiff's personal property electronic files, or to cherry pick or otherwise determine what personal property electronic files of Plaintiff could be returned or could not be returned to Plaintiff.

26. February 7, 2015, Plaintiff filed a "Claim for Damage, Injury, or Death" ("Tort Claim Notice") with the Department of the Interior for property damage of $125,000 and personal injury $125,000, based on twenty-one common law and statutory claims. The Tort Claim Notice was filed within 2 years of the incident giving rise to the claim.

Page 5 – First Amended Complaint Demand for Bench Trial

27. March 9, 2015, the Department of the Interior denied Plaintiff's Tort Claim by letter from Matthew J. McKeown.

28. April 5, 2013, Plaintiff sent an email to Hallac that Defendants did "not include the files in the 'Outlook file folder' which included electronic messages that existed on Mr. Franken's government-issued computer e-mail account." Plaintiff made another written demand for his personal property electronic files on this date.

29. On April 5, 2013, Plaintiff filed a FOIA/Privacy Act request for Defendants to provide him copies of all his electronic files. (FOIA/Privacy Act Request letter from attorney Josh Klinger 4/5/2013).

30. By letter dated April 11, 2013, Gavin Frost, Agency Attorney-Advisor, stated Plaintiff's electronic files were not agency records:

> "With regard to the folder identified as "YNP YCR Desktop," which contains nearly 5,500 files divided into nearly 590 sub-folders and sub-sub-folders with labels such as "Car Insurance," "Cell Phone Provider Ratings," "Home Internet Ratings," "Home Owners Insurance," "Student Loans," "Personal," "Funny," "Jessie Stephens," "Valley Springs," "Titan," "Chris Frasco Pics," "Alaska Pride Fest 2012," and many other identifiers wholly unrelated to Agency work, it appears that the folder, subfolders, sub-sub-folders, and included files do not represent agency records, as defined at 43 C.F.R. § 2/70(2013). (FOIA Letter from Gavin M. Frost 4/11/2013)

31. As of April 11, 2013, as acknowledged in Gavin Frost's letter, Defendants Yellowstone and Hallac knew that the computer files of Plaintiff were Plaintiff's "private electronic files", and not Defendant's property, and still Defendants did not return the personal property to Plaintiff. Mr. Frost's letter also incorrectly stated Plaintiff's last day of employment with Yellowstone was February 8, 2013, when in fact Plaintiff's last day of employment with Yellowstone was February 9, 2013.

32. After Plaintiff's complaints with the Equal Employment Opportunity Commission for discrimination based on sexual orientation and retaliation were settled, Defendants Jewell, Yellowstone, Hallac and Does 1-8 continued to discriminate and retaliate against Plaintiff depriving

him of equal dignity, while he was still a Yellowstone employee and after Plaintiff left Yellowstone's employ, by retaining his personal property and forcing Plaintiff to retain two attorneys, file FOIA/Privacy Act requests, and ultimately, as a last resort, to file this suit in order to recover his personal property and protect his civil rights. Defendants knowingly, intentionally, unreasonably, and wrongfully seized and withheld from Plaintiff thousands of personal property electronic files despite multiple requests that copies be returned to Plaintiff.

33. On September 8, 2015, Plaintiff brought this claim against Defendants.

**FIRST CLAIM FOR RELIEF**
**(CONVERSION WY ST. § 1-3-106 against all Defendants)**

34. Plaintiff incorporates paragraphs 1-33 as if fully set forth herein.

35. Plaintiff became aware that Defendants were retaining his personal property on or about February 11, 2013, when Defendants did not respond to his first email request for his personal property. This action is commenced on September 8, 2014 which is within four years of the Defendants' unlawful conversion of Plaintiff's property (WY St. §1-3-106).

36. Plaintiff was employed as an administrative support assistant by Yellowstone National Park ("Yellowstone") through February 9, 2013.

37. The Yellowstone electronic use policy allowed all employees to use Yellowstone computers for personal purposes on non-duty/personal time.

38. Plaintiff stored personal banking, credit card, and other financial records, health and medical records, legal records, including attorney-client privileged communications with his lawyers, photos, daily diary-type notes documenting the adverse health effects that Plaintiff suffered as a result of the discrimination and retaliation, photos from the local Lesbian, Gay, Bisexual, and Transgender Pride events that Plaintiff attended with other agency employees, emails and other personal files associated

with Plaintiff's active involvement in an agency Lesbian, Gay, Bisexual, and Transgender employee group. These files were maintained on Plaintiff's Yellowstone computer as permitted by Yellowstone's workplace practice. Plaintiff's personal property was his alone and did not belong to Yellowstone as confirmed in Gavin Frost's April 11, 2013 letter to Plaintiff's attorney (FOIA Letter from Gavin M. Frost 4/11/13).

39. Plaintiff had a right to possess the property, a right which was confirmed by Yellowstone's agreement to return all of his property to him but which they later reneged.

40. Plaintiff, who is a gay male, filed two Equal Employment Opportunity Commission complaints against Yellowstone for discrimination and retaliation based on his sexual orientation and Yellowstone's practice of withholding a promotion from Plaintiff as a gay man.  Subsequent to the settlement, Plaintiff transferred to a position in California.

41. Plaintiff's last day of work at Yellowstone was February 9, 2013. Prior to that day, Defendants, without notice to Plaintiff, disabled his access to his personal work computer.

42. Yellowstone refused to allow Plaintiff to recover his personal property electronic files, and retained same, withholding it from Plaintiff as of February 9, 2013 and maintaining dominion and possession of Plaintiff's personal property to the present.

43. Plaintiff requested that Yellowstone allow him to recover or have one of the Yellowstone technicians recover his personal property and give it to him. Yellowstone refused.  Plaintiff, after relocating to California offered multiple times to travel to Wyoming at his own expense to meet with technicians in order to recover his property. Again, Yellowstone declined based on orders from Hallac and Does 1-8.

44. Plaintiff was denied the use and enjoyment of his personal property, because he was unable to access information needed for human resources at his new job or to make use of personal records containing information such as his health/medical history and records, home insurance, cell phone, car

insurance, student loans, and other personal information a person uses in their day to day life activities.

45. Because Plaintiff stored the information on his work computer, Yellowstone lawfully had possession of it; however, when Plaintiff demanded its return, and Defendants refused, their continued retention of Plaintiff's property and withholding of the property from Plaintiff was wrongful.

46. Yellowstone, Hallac and Does 1-8 allegedly sent some of Plaintiff's personal files on a thumb drive placed in a standard envelope which arrived at Plaintiff's home in California with the envelope torn and no thumb drive enclosed. Plaintiff contacted Defendant, who refused to provide Plaintiff with ALL of his personal property electronic files. .

47. Plaintiff filed a Freedom of Information Act request to obtain his personal property electronic files; however, Defendant responded that the files that Plaintiff sought "as Mr. Franken's 'personal files,' do not appear to constitute agency records. . ." and therefore they would not provide the files to Plaintiff.[1]

48. Even after Defendants responded to Plaintiff that the files that Plaintiff was seeking were not Yellowstone's files, Yellowstone, Hallac and Does 1-8 still refused to return Plaintiff's personal property, retaining complete control over the files and personal property, with full knowledge that the files that Plaintiff was requesting were his personal property.

49. As a direct and proximate cause Plaintiff is deprived of the use and enjoyment of his electronic files and personal property (irreplaceable tax files, financial records, emails, photos, personal information, daily diary, and evidence of discrimination against gays and lesbians) and is harmed in an amount of not more than $125,000.

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set forth in the Prayer for Relief, below.

---

[1] `Letter from Gavin M. Frost, Agency Attorney Advisor, April 11, 2013`

Page 9 – First Amended Complaint Demand for Bench Trial

Bassinger & Harvey
5 Centerpointe Drive, Suite 400
Lake Oswego, Oregon 97035
Off 916-469-5120; Fax 916-307-5163

## SECOND CLAIM FOR RELIEF
### (First Amendment: Free Speech against Hallac and Does 1-8)

50. Plaintiff incorporates by reference paragraphs 1-49 of this complaint as if fully restated here.

51. This claim is brought forth within six (6) years of Hallac's, Doe's 1-8, and Yellowstone's denial of Plaintiff's right to his personal property.

52. Yellowstone, Hallac, and Does 1-8 recognized that Plaintiff is a gay man who advocated against Defendants' practices of discrimination against gays and lesbians by filing two EEOC complaints. Within days of settling the EEOC complaints, Yellowstone, Hallac, and Does 1-8 seized all of Plaintiff's electronic files and personal property stored on his work computer and denied Plaintiff access to and the return of his personal property in retaliation for his advocacy for the rights of gays and lesbians employed by Yellowstone.

53. On January 11, 2013, Plaintiff obtained a settlement from Yellowstone for discrimination and retaliation claims filed against Yellowstone with the Equal Employment Opportunity Commission. The claims alleged discrimination against Plaintiff as a gay man

54. Hallac and Does 1-8 were aware that Plaintiff had extensive personal data, files, and emails stored on his work computer.

55. Hallac and Does 1-8 acted individually and outside the scope of their employment to silence and retaliate against Plaintiff for bringing discrimination claims against managers of Yellowstone including Hallac and Does 1-8.

56. Before Plaintiff left Yellowstone's employ and transferred to California, Yellowstone, upon the unlawful direction of Hallac and Does 1-8, seized all of Plaintiff's personal property electronic files stored on Plaintiff's Yellowstone work computer.

57. Yellowstone gave Plaintiff no procedural or substantive notice that it was going to disable his

1   computer access, seize his work computer, and retain all of his personal files and property.

2   58. Plaintiff was told by a Yellowstone employee that it would be a simple matter to give Plaintiff
3   all of his files and personal property; therefore, the retention of Plaintiff's personal property was
4   arbitrary and capricious, given it was a very easy, quick, and simple process to deliver the files to
5   Plaintiff and that Yellowstone acknowledged that the files were not Yellowstone's property.  Plaintiff
6   offered to pay all costs incurred for the collection and return of his files (for postage and CD) in his
7   2/11/13 email to Andy Bilton.

8   59. Yellowstone had the means and ability to give Plaintiff his personal property located on
9   Plaintiff's Yellowstone work computer. Yellowstone, Hallac, and Does' 1-8 refusal to give Plaintiff his
10  personal property is analogous to Yellowstone refusing to allow Plaintiff to remove his car from the
11  parking lot, or his clothing from an employee locker, or his files in a desk or filing cabinets.
12  Yellowstone has no property interest in Plaintiff's personal property electronic files.

13  60. Hallac and Does 1-8 conspired to deprive Plaintiff of his personal property electronic files for
14  the specific purpose of teaching him a lesson for speaking out against Yellowstone's discriminatory
15  practices against him as a gay man.

16  61. Plaintiff alleges that Hallac and Does 1-8's actions were purposeful, intentional, and designed to
17  harass, discriminate against and discourage Plaintiff and others from petitioning the government for the
18  redress of grievances guaranteed by the First Amendment to the U.S. Constitution denying Plaintiff due
19  process and equal protection.

20  62. Yellowstone, by and through the unlawful actions of Hallac and Does 1-8 using their
21  governmental badge of authority, took an unreasonable and indefensible position denying plaintiff a
22  right to his personal property without due process of law and deprived Plaintiff, and continues to
23  deprive Plaintiff, of the use and enjoyment of Plaintiffs' personal property.

Page  11 – First Amended Complaint Demand for Bench Trial

63. By their actions, Hallac and Does 1-8 specifically targeted Plaintiff based on his protected status and protected activity as an advocate for gay rights and for his free speech rights as guaranteed by the First Amendment to the U.S. Constitution 42 U.S.C. § 1983.

64. As a direct and proximate result of the Defendant's decision to target the Plaintiff based on his sexual orientation and his advocacy for the rights of gays and lesbians, the Plaintiff was deprived of his electronic files and his personal property in an amount not to exceed $125,000 according to proof, plus pre-judgment interest, as well as an award of time and cost to restore and reconstruct lost information based on the proof presented at the time of trial.

65. As a direct and proximate result of Defendants' actions, the Plaintiff suffered harm to his reputation and standing in the community when upon leaving he was denied the wooden arrowhead routinely given to Yellowstone employees who have worked at Yellowstone for five years or more.

66. As a direct and proximate result of the actions of the Defendants, the Plaintiff was restrained, inhibited, and chilled in the exercise of his fundamental constitutional rights, and Hallac and Does 1-8's actions were designed to discourage other employees from exercising their free speech rights.

67. As a direct and proximate result of the Defendants' actions, Plaintiff suffered emotional distress and anguish, including damage to his physical and emotional well-being, and incurred costs for counseling and medical treatment.

68. In addition, Plaintiff incurred costs and attorney fees in challenging the Defendants' actions and in bringing this claim.

WHEREFORE, Plaintiff respectfully requests that the court grant the relief set forth in the Prayer for Relief, below.

////
////

Page  12 – First Amended Complaint Demand for Bench Trial

Bassinger & Harvey
5 Centerpointe Drive, Suite 400
Lake Oswego, Oregon 97035
Off 916-469-5120; Fax 916-307-5163

## THIRD CLAIM FOR RELIEF
**(Substantive Due Process under 5th Amendment against Hallac and Does 1-8)**

69. Plaintiff incorporates by reference paragraphs 1-68 of this complaint as if fully restated here.

70. First, Hallac and Does 1-8 were aware that withholding Plaintiff's personal property electronic files would cause him harm, and they intentionally withheld those files. Therefore, the harm to Plaintiff was foreseeable by Does 1-8 and Hallac.

71. Second, Hallac and Does 1-8 acted willfully and with complete disregard to the rights of Plaintiff to possess his personal property, even after Yellowstone declared the files did not represent Yellowstone records/property, defendants Hallac and Does 1-8 acted outside the scope of their employment to harass, discriminate against and retaliate against Plaintiff.

72. Hallac and Does 1-8 deprived Plaintiff of his personal electronic files and personal property. These actions included but were not limited to the following:

(a) Yellowstone, DOES 1-8, and Hallac conspired by meeting together and agreeing to deprive Plaintiff of his personal electronic files and personal property to teach Plaintiff a lesson by depriving Plaintiff of his personal property, even though it was easily within the power of Yellowstone, Hallac, and Does 1-8 to provide the property to Plaintiff.

(b) A Yellowstone employee told Plaintiff he could easily provide the files and personal property to Plaintiff, but that he would have to obtain permission from higher ups.

(c) Yellowstone, Hallac, and Does 1-8 failed to adequately respond to rectify Plaintiff's injury resulting from Plaintiff loss of property, even though the harm to Plaintiff was clear and foreseeable.

(d) Hallac and Does 1-8 held positions of authority in Yellowstone where they wielded the authority to release or deny the release of Plaintiff's property to him. Hallac and Does 1-8 had no

legitimate or business claim to or interest in the property because Plaintiff complied with all employment requirements, and the content of Plaintiff's personal files were of no legitimate business interest to Yellowstone. Hallac and/or Does 1-8 made the affirmative decision to deny possession of Plaintiff's personal property to him. Further, Plaintiff agreed to allow Defendants to retain copies of the files and asked only that he be provided with a copy of the electronic files. Yellowstone had no legitimate business basis for refusing Plaintiff's request other than to punish Plaintiff for his speech activity.

(e) The direct result of Hallac and Does 1-8's decision to keep Plaintiff's property caused an immediate and lasting harm to Plaintiff, and said acts by Hallac and Does 1-8 under color of law and apparent authority of position deprived Plaintiff of the use and enjoyment of his personal property for the purpose of causing him injury and in retaliation for his advocacy of gay and lesbian rights in general and for his rights specifically.

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set forth in the Prayer for Relief below.

**FOURTH CLAIM FOR RELIEF**
**(Procedural Due Process Fifth Amendment against Hallac and Does 1-8)**

73. Plaintiff incorporates by reference paragraphs 1-72 of this complaint as if fully restated here.

74. The actions of the Defendants failed to give the Plaintiff adequate notice and the chance to be heard with regard to his property interest in the personal electronic files and personal property stored on Yellowstone property, as protected by the Fifth Amendment to the U.S. Constitution. The Defendants failed to provide due process in the following ways:

(a) Defendant Does 1-8 and Hallac failed to give clear directives to Plaintiff regarding the

Page 14 – First Amended Complaint Demand for Bench Trial

time when he was to have removed all of his personal possessions and property from his work site and from his Yellowstone work computer; Plaintiff received verbal permission from his team lead that he could retrieve his personal property at his desk on Saturday, February 9, 2013.  Defendants failed to give Plaintiff notice they Defendants would disable Plaintiff's computer access while he was still an employee.

    (b) Defendants failed to provide Plaintiff with a process to appeal Defendants' decision to deprive him of his personal electronic files and personal property;

    (c) Defendants failed to give Plaintiff an adequate hearing before confiscating, seizing, and withholding his personal property and computer files;

    (d) Defendants admitted that files were Plaintiff's "private electronic files" Plaintiff's files and were not agency records, but persisted in depriving Plaintiff of possession of said property;

    (e) Defendants failed to cite any legal basis in law or policy for their retention of Plaintiff's personal electronic files and personal property.

75. As a direct and proximate result of the Defendant's actions in not providing adequate procedure and process, Plaintiff was deprived of his electronic files and personal property without redress.

76. As a direct and proximate result of the Defendants' actions in not providing adequate procedure and process, Plaintiff was deprived of his personal dignity and right to due process.

77. As a direct and proximate result of the Defendants' actions, the Plaintiff sustained a loss of personal electronic files and property, in the amount of $125,000, exclusive of pre-judgment interest, and according to proof.

78. As a direct and proximate result of the Defendants' actions, the Plaintiff suffered harm to his reputation and standing in his community.

79. As a direct and proximate result of the actions of Defendants, Plaintiff suffered emotional

Page  15 – First Amended Complaint Demand for Bench Trial

distress and anguish, including damage to his physical and emotional wellbeing, and incurred costs for counseling and medical treatment.

80. In addition, Plaintiff incurred costs and attorney fees in defending against the Defendants' actions and in bringing this claim.

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set forth in the Prayer for Relief.

### FIFTH CLAIM FOR RELIEF
### (Equal Protection under Fifth Amendment against Hallac and Does 1-8)

81. Plaintiff incorporates by reference paragraphs 1-80 of this complaint as if fully restated here.

82. The Plaintiff was singled out by the Hallac and Does 1-8 based on his status as a gay man and his advocacy for gay rights and his formal EEOC complaints against Yellowstone.

83. In targeting the Plaintiff by retaining his personal property, denying him the general dignities and pleasantries of a wooden arrowhead as a more than five year employee at Yellowstone, and by seizing his personal property and denying him the opportunity to recover his personal belongings as they would other departing employees, they denied him equal protection under the law.

84. Hallac and Does 1-8 lacks any legitimate legal purpose for singling out Plaintiff for the seizure and withholding of his personal electronic files and personal property.

85. As a direct and proximate result of the Defendants' decision to discriminate against the Plaintiff based on his sexual orientation and advocacy for gay rights, the Plaintiff was deprived of his personal property and electronic files valued at $125,000, and for costs to reconstruct lost electronic files.

86. As a direct and proximate result of the Defendants' actions, the Plaintiff sustained emotional and mental anguish and harm to his emotional well-being.

87. As a direct and proximate result of the defendants Hallac and Does 1-8's actions, Plaintiff

suffered harm to his reputation and standing in the community as a result of Hallac and Does 1-8's denial of the wooden arrowhead provided to employees who have worked five or more years at Yellowstone.

88. As a direct and proximate result of the actions of the Defendants, the Plaintiff was restrained, inhibited, and chilled in the exercise of his fundamental constitutional rights.

89. As a direct and proximate result of the Defendants' actions, the Plaintiff incurred costs and attorney fees in defending against the Defendants' actions and in bringing this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(a) Enter judgment against the Defendants on each of the claims as set forth above, including injunctive relief to prevent Defendants from destroying Plaintiff's personal electronic files and personal property;

(b) Enter judgment ordering Defendants to return ALL of Plaintiff's personal property electronic files retained on his Yellowstone work computer.

(c) Enter a judgment for damages against the Defendants on the First Claim for Relief in the amount of $125,000 for conversion of Plaintiff's computer files and personal property and for the cost of reconstructing information contained in said files; and emotional distress damages in the amount of $125,000.

(d) Enter judgment for damages against Hallac and Does 1-8, on the Second through Fifth Claims for Relief in the amount of $125,000 for loss of Plaintiffs' computer files and personal property or an amount to be proven at trial;

(e) Enter judgment for damages against Defendants on the Second through Fifth Claims for

Page 17 – First Amended Complaint Demand for Bench Trial

Relief for compensatory damages for Plaintiff's mental distress and anguish in an amount of $125,000 or an amount to be proven at trial.

  (f) Enter a declaratory judgment declaring the acts of the Defendants to be a violation of Plaintiff's civil and constitutional rights as alleged in Claims for Relief Two through Five, including the freedom of speech, substantive and procedural due process, and equal protection as set forth herein.

  (g) Award of punitive damages against individual Doe Defendants and Hallac for Claims for Relief Two through Five.

  (h) Award Plaintiff costs and reasonable attorney fees for this action pursuant to 42 U.S.C. §1988.

  DATED this 12th day of January, 2016.

           BASSINGER & HARVEY

          SS/Randy J. Harvey
      By : _____
          RANDY J. HARVEY

          Attorneys for Kevin Franken

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of January, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Bruce A. Emard:    bruce.emard@usdoj.gov
    Attorney to be noticed for Sally Jewell

        By:    /s/_____
                Randy J. Harvey; CBN 255808
                Bassinger & Harvey
                Attorneys for Plaintiff
                5 Centerpointe Dr., Ste 400
                Lake Oswego, OR 97035
                (503) 822-5340
                randy@bassingerharveylaw.com